El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal.
Tenemos la ocasión para resolver si la cláusula de selección de un foro pactada por dos entes corporativos —Abengoa S.A. y American International Group, Inc.— en un contrato de indemnidad es inaplicable a la luz de la doctrina de fraccionamiento de causas de acción.
I
En noviembre de 1994, la Autoridad de Energía Eléctrica (AEE) celebró una subasta pública para la realización del proyecto “Repotenciación de las Unidades 5 y 6 de la Planta Termoeléctrica de San Juan”. A la referida subasta comparecieron varias entidades, entre ellas, la compañía española Abengoa, S.A. Luego de evaluar las propuestas de los licitadores, la subasta fue adjudicada a favor de Abengoa, S.A. Posteriormente, Abengoa S.A., con la autorización de la AEE, cedió el contrato para la realización del referido proyecto a su subsidiaria, Abengoa de Puerto Rico, S.E. (Abengoa P.R.).
En ese mismo año, Abengoa, S.A. suscribió con American International Group Europe (AIG Europe) el Convenio General de Indemnización para establecer “el régimen general de otorgamiento de fianzas"(1) a favor de Abengoa, S.A. y de todas sus subsidiarias. Es imperativo puntualizar que AIG Europe suscribió dicho contrato a su favor y en representación de “cualquier miembro de American Inter *515 national Group Inc. que pueda disponer o emitir una Fianza dentro o fuera de España ... y/o cualquier otra compañía designada para actuar como Asegurador, Coasegurador y/o Reasegurador.”(2) Además de regular el régimen de expedición de fianzas entre Abengoa, S.A. y los miembros de AIG Europe, el Convenio General de Indemnización de 1994 contiene una cláusula de selección de foro mediante el cual las partes pactaron que litigarían sus disputas con relación al contrato en los tribunales de Sevilla, España.
Así las cosas y luego de varios trámites, la AEE y Abengoa RR. otorgaron un contrato para realizar unos trabajos, consistentes en aumentar la potencia de las Unidades 5 y 6 de la Planta Termoeléctrica de San Juan. Conforme a lo pactado, Abengoa P.R. comenzó la construcción del sofisticado equipo para el proyecto.
El 1 de abril de 1999, Abengoa, S.A. y AIG Europe otorgaron un nuevo contrato de indemnización (Convenio de 1999), esencialmente idéntico al contrato suscrito en 1994. Al igual que en el primer contrato de indemnización, AIG Europe suscribió ese contrato a su favor y en representación de “cualquier miembro de American International Group, Inc. que pueda disponer o emitir una Fianza dentro y fuera de España ... y/o cualquier otra compañía designada para actuar como Asegurador, Coasegurador y/o Reasegurador. ”(3)
Asimismo, el Convenio de 1999 incorporó una cláusula de selección de foro. La referida cláusula dispuso lo siguiente:
13a. Con renuncia al fuero que pudiese corresponderles, ambas partes se someten para todas las cuestiones que pudiesen derivarse del presente documento y del documento de Fianza a la jurisdicción de los Jueces y Tribunales ... del Ordenante. Apéndice del Recurso de certiorari, pág. 479.
Conviene señalar que el Convenio de 1999 definió ordenante como “[e]l indemnizador y/o cualquiera de sus filiales *516 y/o cualquiera de sus empresas vinculadas ... que solicitan una Fianza a la Compañía.”(4) Surge con claridad de tal definición que Abengoa, S.A. es el ordenante. A su vez, el Convenio de 1999 definió compañía como “cualquier miembro de American International Group, Inc. que pueda disponer o emitir urna Fianza dentro o fuera de España.”(5) Al año siguiente, Abengoa P.R. instó una demanda contra la AEE por incumplimiento de contrato y daños y perjuicios. Abengoa P.R. alegó, inter alia, que no pudo proceder con la realización de la fase final de instalación y construcción del equipo ya que, transcurridos cinco años desde la adjudicación de la subasta, la AEE aún no había obtenido los permisos ambientales necesarios para continuar las obras.
Por su parte, la AEE reconvino y alegó que Abengoa P.R. incumplió el contrato suscrito entre las partes al abandonar el proyecto sin esperar a que se otorgaran los permisos ambientales necesarios, causándole así daños. La AEE, entonces, entabló una demanda contra tercero contra Abengoa, S.A.(6) y American International Insurance Company of Puerto Rico, fiadora del proyecto.
Luego de varios incidentes procesales, el 13 de mayo de 2005 American International Insurance Company (AIICo) presentó una demanda de coparte contra Abengoa, S.A. En dicha demanda, AIICo alegó que Abengoa S.A. suscribió un contrato de indemnidad mediante el cual se obligó a indemnizarla por todos los gastos y las pérdidas en que haya incurrido como resultado de la expedición de fianzas a favor de Abengoa, S.A. En vista de lo anterior, AIICo solicitó que se dictara sentencia, condenando a Abengoa, S.A. a pagarle a la AEE cualquier suma que tuviese que pagar a ésta y, además, solicitó que se le ordenara el reembolso por todo pago o gasto en que haya incurrido como resultado de la emisión de fianzas para el proyecto.
*517 Es menester señalar que la demanda contra coparte instada por AIICo contra Abengoa, S.A. se ampara en un contrato intitulado “General Contract of Indemnity” (GCI). No obstante, el GCI no está fechado, no está notarizado ni tiene el sello corporativo de AIICo. Además, está firmado solamente por el Sr. José Calvo Sebastián, oficial de Abengoa, S.A.
En respuesta a la demanda contra coparte, Abengoa, S.A. presentó una Moción de Desestimación. Alegó que el Convenio de 1999 suscrito con AIG Europe —el cual incluye a AIICo— contiene una cláusula de selección de foro que dispone que todos los asuntos relacionados con la indemnidad por parte de Abengoa S.A., como resultado de las fianzas emitidas por cualquier miembro de American Internacional Group, Inc., se litigarán exclusivamente en los tribunales de Sevilla, España. Por su parte, AIICo se opuso a la solicitud de desestimación y argüyó que la demanda de coparte estaba fundamentada en el GCI, el cual no contiene una cláusula de selección de foro. Por esta razón se podía exigir la indemnidad a Abengoa, S.A. en los tribunales de Puerto Rico.
Luego de ponderar los argumentos esbozados por las partes, el Tribunal de Primera Instancia desestimó la demanda de coparte instada por AIICo contra Abengoa, S.A. El tribunal a quo determinó que según lo pautado en Unisys v. Ramallo Brothers, infra, y en los Convenios de 1994 y 1999, Abengoa, S.A. y AIICo están obligadas a dirimir en los tribunales españoles cualquier controversia relativa a la indemnidad de la primera respecto a las fianzas emitidas por la segunda para la realización del proyecto en la Planta Termoeléctrica de San Juan.
El foro primario resolvió que aun cuando el GCI no está firmado, fechado ni notarizado, no contradice las cláusulas de selección de foro plasmadas en los Convenios de 1994 y 1999, puesto que no contiene una cláusula a esos efectos. Determinó, además, que AIICo admitió la validez y obligatoriedad del Convenio de 1999 mediante una carta suscrita por la Sra. Joann Kerwin —representante de American In *518 ternacional Underwriters, filial de AIICo— en donde le notifica a Abengoa, S.A. que tiene la obligación de rembolsar a AIICo los gastos que ésta estuviera obligada a pagar como fiadora de acuerdo con el Convenio de 1999.
Finalmente, el foro primario razonó que la demanda de coparte instada por AIICo contra Abengoa, S.A. complicaría innecesariamente los procedimientos, ya que el caso trataba sobre temas técnicos, estaba bastante adelantado y dicha reclamación no estaba relacionada con las causas y los hechos que serían adjudicados en la controversia original. En vista de lo anterior, el foro de instancia decretó que, en virtud de la amplia discreción que posee para manejar los procedimientos de forma justa, rápida y económica, procedía la desestimación de la demanda contra coparte.
Inconforme con el dictamen, AIICo recurrió al Tribunal de Apelaciones. Adujo que el foro primario erró al fundamentar la desestimación de la demanda contra coparte en los Convenios de 1994 y 1999 suscritos entre Abengoa, S.A. y AIICo, ya que la referida demanda se fundamentaba en el Código Civil y en el GCI.
El foro apelativo intermedio revocó el dictamen del tribunal a quo y resolvió que, independientemente de la existencia y validez de la cláusula de selección de foro, en nuestra jurisdicción impera la doctrina de fraccionamiento de causas de acción. Cónsono con lo anterior, determinó que como la demanda contra coparte incoada por AIICo está relacionada con la demanda interpuesta por Abengoa P.R. contra la AEE, todas las controversias debían ser dilucidadas conjuntamente, para así evitar el fraccionamiento de causas e incurrir en gastos innecesarios y molestias adicionales para los demandados.
Insatisfecho con tal determinación, Abengoa, S.A. presentó un recurso de certiorari ante este Tribunal y sostiene que el Tribunal de Apelaciones cometió los errores siguientes:
PRIMER ERROR: Erró el TA al negarse a seguir a Unisys v. *519 Ramallo Brothers, 128 D.P.R. 842 (1991) y al utilizar en vez la doctrina sobre el fraccionamiento, cuando media un contrato internacional entre matrices corporativas sofisticadas que selecciona expresamente al foro aplicable, y anticipa contractualmente la posibilidad de un fraccionamiento.
SEGUNDO ERROR: En la alternativa, erró el TA al no deferir al ejercicio de la amplia discreción procesal del TPI al desestimar sin prejuicio una reclamación tardía y meramente permisible, que complicaría innecesariamente el litigio ante el TPI, no afecta a las otras controversias, y por definición no puede adjudicarse de forma simultánea en el mismo pleito. Recurso de certiorari, pág. 7.
Examinada la petición de certiorari, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver sin ulterior trámite.
r—H I—I
 En nuestra jurisdicción rige el principio de libertad de contratación, el cual le permite a las partes “establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público”.(7) Según dicho principio y como parte de la voluntad e intención entre las partes, éstas pueden incluir en los contratos que suscriban una cláusula de selección de foro. Como se sabe, las cláusulas de selección de foro tienen el propósito de establecer de antemano la jurisdicción del tribunal que entenderá en el caso. Esto supone, a su vez, una renuncia a la jurisdicción de determinado tribunal.
En Unisys v. Ramallo Brothers, 128 D.P.R. 842 (1991), tuvimos la oportunidad de adjudicar la validez y aplicación de las cláusulas de selección de foro. En esa ocasión, y por no contar con jurisprudencia relativa a las cláusulas de selección de foro, acudimos a la casuística federal.
Las cláusulas de selección de foro “están íntimamente relacionadas con la política pública de no imponer trabas *520 al comercio interestatal e internacional”.(8) A tales efectos, el Tribunal Supremo de Estados Unidos resolvió en The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9 (1972) lo siguiente:
The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts. ... We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts. (Énfasis suplido.)
Para poner en vigor las clausulas de selección de foro, negociadas bajo el palio de la libertad de contratación, los tribunales federales y estatales desterraron paulatinamente la visión provincial que requería que todas las controversias fuesen resueltas en sus tribunales. De esta manera, el Tribunal Supremo de Estados Unidos dio paso a la libertad de contratación entre las partes y, a su vez, fomentó el comercio internacional.
De acuerdo con lo anterior, el Tribunal Supremo de Estados Unidos sostuvo en cuanto a las cláusulas de selección de foro: "... are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be ‘unreasonable’ under the circumstances.... Thus, in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside.” (Énfasis suplido.)(9)
Teniendo como norte lo resuelto por el Tribunal Supremo de Estados Unidos, concluimos en Unisys v. Ramallo Brothers, supra, que las cláusulas contractuales de selección de foro son prima facie válidas y que quien que se opone a su aplicación tiene el peso de la prueba. Sobre este particular, los tribunales federales desarrollaron una serie *521 de criterios en aras de determinar la inaplicabilidad de las clusulas contractuales de seleccin de foro en determinados casos. En Unisys v. Ramallo Brothers, supra, incorporamos tales criterios y resolvimos que las cláusulas de selección de foro no aplicarán en las circunstancias siguientes:
1. Que el foro seleccionado resulta ser irrazonable e injusto.
2. Que, de ventilarse el caso en dicho foro, se incurriría en una clara y patente inequidad, o sería irrazonable o injusto.
3. Que la cláusula no es válida porque fue negociada mediando fraude o engaño.
4. Que la implantación de dicha cláusula derrotaría la política pública del Estado.
Por lo tanto, la parte que se opone a la aplicación de la cláusula de selección de foro tiene que demostrar que a ésta le aplicaría una de las mencionadas circunstancias.(10) Esto es así, puesto que “[l]a validez y el cumplimiento de los contratos no puede dejarse al arbitrio de uno de los contratantes”.(11)
Ahora bien, si la cláusula de selección de foro fue producto de la negociación entre partes contratantes sofisticadas, es inevitable concluir que éstas consideraron las ventajas y desventajas del foro seleccionado, por lo que no basta alegar que dicho foro es inconveniente para que un tribunal decrete su inaplicabilidad.(12) A esos efectos, el Tribunal Supremo de Estados Unidos expresó: “the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it *522 would be unfair, unjust, or unreasonable to hold that party to his bargain.” (Énfasis suplido.)(13)
Para garantizar la voluntad de las partes contratantes y brindar estabilidad al comercio internacional y a las relaciones económicas, concluimos que la parte que alegue que el foro seleccionado en el contrato es inconveniente, deberá demostrar que tal inconveniencia es tan grave que, para todos los propósitos prácticos, sería privado de su día en corte. De no ser así, no se puede concluir, sin más, que cumplir con la cláusula de selección de foro estipulada en el contrato es injusto e irrazonable.
Con estos preceptos en mente, y a la luz del principio de libertad de contratación y de la voluntad de las partes, debemos resolver si la cláusula de selección de foro pactada por dos entes corporativos sofisticados es inaplicable por razón de la doctrina de fraccionamiento de causas de acción.
I—I HH I—I
En el caso de autos, el Tribunal de Apelaciones determinó que por motivo de la doctrina de fraccionamiento de causa de acción es inaplicable la cláusula de selección de foro pactada por Abengoa, S.A. y AIG Europe, ya que de esa manera AIICo —filial de AIG Europe— evita el inconveniente de litigar las causas de acción bajo el palio del contrato de indemnidad en Sevilla, España.
Amparado en tal razonamiento, AIICo arguye en su ex-tenso alegato que la desestimación de la demanda de coparte entablada contra Abengoa, S.A. causaría una clara y patente inequidad, ya que desembocaría en una multiplicidad de pleitos y fraccionaría las causas de acción. Puntualiza, además, que el GCI no contiene una cláusula de selección de foro, puesto que la intención de las partes era *523 litigar los asuntos de indemnidad en el lugar donde se construyó la obra. No le asiste la razón.
Adviértase, de entrada, que en Unisys v. Ramallo Brothers, supra, pautamos que en nuestra jurisdicción existe una fuerte presunción a favor de la validez de las cláusulas de selección de foro. Por tal razón, la parte que impugna la aplicación de la cláusula de selección de foro tiene que demostrar, al menos, una de las circunstancias siguientes: (1) que el foro seleccionado es irrazonable e injusto; (2) que se incurriría en una clara y patente inequidad si se ventila el caso en dicho foro; (3) que la cláusula no es válida porque fue negociada mediante fraude o engaño, o (4) que la implantación de esta cláusula derrotaría la política pública del Estado.
AIICo centra su análisis en el argumento que la desestimación de la demanda de coparte contra Abengoa, S.A. resultaría en una clara y patente inequidad, puesto que lo obligaría a litigar la causa de acción relativa a la indemnidad en los tribunales españoles. Dicho argumento no es plausible.
En primer lugar, no cabe duda que los contratos de indemnidad otorgados en 1994 y 1999 fueron suscritos por dos entes corporativos sofisticados —Abengoa, S.A. y AIG Europe— que ciertamente consideraron las ventajas y desventajas al momento de seleccionar un foro particular para dilucidar posibles litigios. No empece los posibles inconvenientes que pudiesen surgir al litigar en los tribunales españoles, éstos pactaron voluntariamente que dichos tribunales dilucidarían las controversias que surgieran en virtud del Convenio de 1999. El foro seleccionado por las partes contratantes fue producto su libertad de contratación, por lo que su voluntad debe ser respetada, ya que la cláusula de selección de foro no contraviene las leyes, la moral ni el orden público.
En segundo lugar, AIICo no probó que la desestimación de la demanda de coparte instada contra Abengoa, S.A., como resultado de la cláusula de selección de foro, es una clara y patente inequidad. AIICo se ha limitado a argüir en *524 su alegato que el mero hecho de litigar en España, la controversia sobre la indemnidad de Abengoa, S.A. es una inequidad. Esto no es suficiente. AIICo no ha podido establecer en forma alguna que el litigar en los tribunales españoles es una inequidad.
Es preciso señalar que la desestimación de la demanda de coparte incoada contra Abengoa, S.A. no es una clara y patente inequidad, porque no elimina a ninguna parte o reclamación indispensable para la controversia original. Asimismo, Abengoa, S.A. no niega que AIICo pueda tener derecho a recobrar los gastos procedentes del contrato de indemnidad, sino que lo que argumenta es que tal determinación debe ser adjudicada por los tribunales españoles en Sevilla.
Asimismo, AIICo no demostró que están presentes las restantes circunstancias requeridas para decretar la inaplicabilidad de la cláusula de selección de foro. En primer plano, AIICo no demostró que el foro seleccionado es irrazonable ni injusto. En ápice alguno de su alegato, AIICo logró articular un argumento que demuestre a cabalidad que los tribunales españoles son injustos o irrazonables. De otra parte, AIICo no ha demostrado que la cláusula de selección de foro es inaplicable por ser producto de fraude o engaño. Surge del expediente que AIICo admitió la validez de los Convenios de 1994 y 1999, y de la cláusula de selección de foro estipulada en ellos. Además, AIICo no disputa que es miembro de AIG Europe. Sobre estos extremos, es menester señalar que el Tribunal de Apelaciones y el foro primario acogieron, como una admisión contra interés que obliga a AIICo, una comunicación de una oficial de la filial neoyorquina de American International Group, Inc., que envió una carta a Abengoa, S.A. en la que informa, en representación de AIICo, que en virtud del Convenio de 1999, Abengoa, S.A. tiene la obligación de rembolsar a AIICo cualquier suma adjudicada en su *525 contra y a favor de la AEE, como resultado de las fianzas emitidas por su empresa.(14)
Finalmente, al darle plena validez y reconocimiento a la cláusula de selección de foro, no derrotamos la política pública del Estado. Todo lo contrario. Al imprimir plena validez a la cláusula de selección de foro pactada por Abengoa, S.A. y AIG Europe actuamos conforme a la política pública de no imponer trabas al comercio interestatal e internacional.
En un intento por soslayar la aplicación de la cláusula de selección de foro, AIICo aduce que la doctrina de cosa juzgada, en su modalidad de fraccionamiento de causa de acción, hace inaplicable dicha cláusula. Sabido es que la doctrina de cosa juzgada dispone que la sentencia decretada en un pleito anterior impide que en un pleito posterior se litiguen, entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas, y aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción previa.(15) Ahora bien, la modalidad del fraccionamiento de causa de acción se aplica a toda reclamación posterior entre las mismas partes sobre el mismo asunto.(16)
En el caso ante nosotros es forzoso colegir que no aplica la doctrina de fraccionamiento de causa de acción porque, de resultar favorecida Abengoa P.R. en la resolución del pleito, AIICo podrá instar, sin problemas, la demanda relativa a la indemnidad en los tribunales españoles. Concluimos, pues, que en el caso de autos la defensa de cosa juzgada, en su modalidad de fraccionamiento de causa de acción, no derrota ni convierte en inaplicable una cláusula de selección de foro legalmente pactada. Resolver lo contrario le imprimiría incertidumbre a las relaciones contrac *526 tuales entre las compañías multinacionales que hacen negocios en nuestra jurisdicción.
Por lo tanto, erró el Tribunal de Apelaciones al resolver que la doctrina de fraccionamiento de causa de acción prevalece sobre una cláusula de selección de foro pactada por dos entes corporativos sofisticados.
Finalmente, AIICo aduce en su alegato que el GCI no contiene una cláusula de selección de foro porque la intención de las partes era litigar la controversia sobre la indemnidad en el lugar donde se construyó la obra, o sea, en los tribunales de Puerto Rico. Es un principio de derecho arraigado en nuestro ordenamiento que, en apelación, nos abstendremos de adjudicar cuestiones no planteadas ante el Tribunal de Primera Instancia.(17) Al examinar el expediente de este caso notamos que, en efecto, AIICo no planteó tal argumento en el foro primario. Por esta razón no podemos, en etapa de revisión, pasar juicio sobre tal cuestión, pues no fue presentada ni atendida por los tribunales inferiores.
No obstante, es preciso puntualizar que el GCI de ninguna manera contradice el Convenio de 1999, ya que no contiene una disposición dirigida a esos efectos. Además, resulta curioso que dicho documento no contiene fecha, no está notarizado como el Convenio de 1999 y sólo tiene la firma de un oficial de Abengoa, S.A.
En virtud de lo expuesto anteriormente, resolvemos que el Tribunal de Primera Instancia actuó correctamente al desestimar la demanda de coparte instada por AIICo contra Abengoa, S.A.
IV
Por los fundamentos que anteceden, revocamos en su totalidad la sentencia emitida por el Tribunal de *527 Apelaciones. En consecuencia, se reinstala la sentencia parcial emitida por el Tribunal de Primera Instancia, Sala de San Juan.
La Juez Asociada Señora Rodriguez Rodríguez emitió una opinión concurrente. La Jueza Asociada Señora Fiol Matta no intervino. La JuezaAsociada Señora Pabón Charneco no interviene.

 Apéndice del Recurso de certiorari, pág. 474.

 íd.

 íd, pág. 478.

 íd.

 íd.

 Es menester señalar que la causa de acción contra Abengoa, S.A. se ampara en un contrato de garantía solidaria que alegadamente suscribió para avalar las obligaciones de su subsidiaria, Abengoa de Puerto Rico S.E. (Abengoa P.R.).

 Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372.

 Unisys v. Ramallo Brothers, 128 D.P.R. 842, 856 (1991).

 The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10-15 (1972).

 Véase The Bremen v. Zapata Off-Shore Co., supra; Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991).

 Art. 1208 del Código Civil, 31 L.P.R.A. sec. 3373.

 Por no ser necesario para la solución del caso ante nosotros, no nos detendremos a considerar si en otras circunstancias el inconveniente de litigar en el foro estipulado es razón suficiente para decretar la inaplicabilidad de la cláusula de selección de foro.

 The Bremen v. Zapata Off-Shore Co., supra, pág. 18.

 Apéndice del Recurso de certiorari, págs. 420-421.

 P.R. Wire Prod. v. C. Crespo & Assoc., 175 D.P.R. 139 (2008).

 Zambrana v. Tribunal Superior, 100 D.P.R. 179, 181 (1971).

 Echandi Otero v. Stewart Title, 174 D.P.R. 355 (2008); Trabal Morales v. Ruiz Rodríguez, 125 D.P.R. 340 (1990); Dorante v. Wrangler of P.R., 145 D.P.R. 408 (1998).